# Exhibit A

STEPHANIE RILEY,
Individually and on behalf of all
others similarly situated,

       Case No:  2:22-cv-12555

      Plaintiff,

       Hon. Laurie J. Michelsen

v.

       Mag. Judge Elizabeth A. Stafford

HENRY FORD HEALTH SYSTEM,

      Defendant.

---

| | |
|---|---|
| Jennifer McManus (P65976)<br>FAGAN McMANUS, P.C.<br>25892 Woodward Avenue<br>Royal Oak, MI  48067<br>(248) 658-8951<br>jmcmanus@faganlawpc.com | Allan S. Rubin (P44420)<br>Daniel C. Waslawski (P78037)<br>JACKSON LEWIS P.C.<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48075<br>(248) 936-1900<br>Allan.Rubin@jacksonlewis.com<br>Daniel.Waslawski@jacksonlewis.com |
| Clif Alexander<br>Texas Bar No. 24064805<br>Austin W. Anderson<br>Texas Bar No. 24045189<br>ANDERSON ALEXANDER, PLLC<br>101 N. Shoreline Blvd., Suite 610<br>Corpus Christi, TX  78401<br>(361) 452-1279<br>team@a2xlaw.com | Robert A. Farr (P61597)<br>Henry Ford Health System<br>Office of General Counsel<br>One Ford Place, Room 4B<br>Detroit, MI 48202<br>(248) 703-0662<br>Rfarr1@HFHS.org<br>(248) 703-0662 |
| Attorneys for Plaintiff | Attorneys for Defendant |

---

## SETTLEMENT AGREEMENT AND RELEASE

WHEREAS, Plaintiff Stephanie Riley (hereinafter "Riley" or the "Named Plaintiff") filed a civil action on October 24, 2022, individually and on behalf of all other allegedly similarly situated persons, against Defendant Henry Ford Health System ("HFHS" or "Defendant"), in the Eastern District of Michigan, Case No. 2:22-cv-12555 (the "Action"). Since the Action was filed, approximately 32 individuals ("Opt-Ins") have consented to join the Action as plaintiffs

and two individuals have withdrawn their consent. Collectively, the Named Plaintiffs and the Opt-Ins are referred to as "Plaintiffs."

WHEREAS, on March 22, 2023, representatives of Plaintiffs and Defendant (Plaintiffs and Defendant hereinafter collectively referred to as the "Parties") attended a virtual facilitative mediation (the "Mediation") with an agreed upon private mediator, Michael Russell. At mediation, the Parties agreed to resolve the matter.

WHEREAS, it is the desire of the Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims brought in the Action arising out of the facts alleged or that reasonably arise out of the facts alleged in this Action, *i.e.,* the alleged practices set forth in the pleadings in the Action.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties enter into this Settlement Agreement and Release ("Settlement Agreement"), subject to the Court's approval, as follows:

1. Definitions: The "Settlement Collective" or the "Collective" consists of all current and former Medical Assistants ("MAs"), Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and any other employees who worked in any facility or in any position where a currently Named Plaintiff or Opt-In Plaintiff worked, who were paid on an hourly basis, employed by Henry Ford Health System, who did not work in Henry Ford's Corporate Office Division or for Health Alliance Plan ("HAP"), anywhere in the United States, at any time from October 24, 2019 through the final disposition of this matter ("Putative Collective Members"), and all current and former employees of HFHS who previously filed a consent to join this Lawsuit (i.e., the Named Plaintiff and the Opt-Ins). The Parties agree that the Settlement Collective shall not include any persons who did not work for HFHS.

   a. "Settlement Collective Member" means Named Plaintiffs, Opt-In Plaintiffs, and Settlement Collective Members who opt-into the case by cashing their settlement checks.

   b. "Releasees" refers to and includes HFHS, its present and former subsidiaries, divisions, parent companies, holding companies, stockholders, shareholders, officers, directors, employees, agents, servants, representatives, attorneys, insurers, affiliates and the successors, heirs and assigns of any such entity or person, as well as any individual who could be included within the definition of "employer" under the Fair Labor Standards Act ("FLSA"), the Michigan Improved Workforce Opportunity Wage Act, MCL § 408.931 *et seq.*, the Michigan Payment of Wages and Fringe Benefit Act, MCL § 408.471 *et seq.*, and/or any federal, state, or local law or ordinance pertaining to the payment of wages in any location that a Settlement Collective Member worked or resided, including but not limited to all officers, directors, and managers of HFHS and the aforementioned entities in their personal capacities.

c. The "Parties" refers collectively to Plaintiffs and Defendant.

d. "Collective Counsel" refers to Fagan McManus, P.C. and Anderson Alexander, PLLC.

e. "Collective Period" means the period beginning on October 24, 2019 and extending through the final disposition of this matter.

f. "Settlement Administrator" means Rust Consulting.

g. "Effective Date" means the date on which the last of all of the following events have occurred, provided that each and every of the following events occurred: (i) counsel for Defendant is in physical receipt of a fully executed copy of this Agreement, and a completed and signed IRS Form W-9 from Anderson Alexander, PLLC; (ii) Named Plaintiff has filed with the Court a motion for approval of the settlement seeking approval of this settlement and dismissal of the Lawsuit with prejudice, and (iii) the Court has entered a final order approving the Settlement and issued the Judgment dismissing the Lawsuit with prejudice.

2.      This Settlement Agreement is entered into between the Plaintiffs and the Defendant. This Settlement Agreement is subject to the terms hereof and approval by the Court. Plaintiffs and Defendant agree to fully settle, compromise, and resolve all claims that were or could have been brought in the Action based on the facts pled, on the terms set forth in this Settlement Agreement.

3.      The Parties agree to waive all appeals arising out the approval of this stipulation and/or the entry of Judgment by the court.

4.      Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or Releasees. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. In particular, and without limiting the generality of the foregoing, nothing in this Settlement Agreement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility, or fault by Defendant or Releasees, who expressly deny any liability, wrongdoing, impropriety, responsibility, or fault. HFHS maintains that it has complied with all relevant laws, including the Fair Labor Standards Act and all state wage and hour laws, and that it always has paid Collective Members for all their hours of work.

5.      Collective Counsel have thoroughly investigated the facts of the Action and have diligently pursued investigation and prosecution of Collective Members' claims against Defendant. Based on their own independent investigation and evaluation, Collective Counsel believes that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Collective

given all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendant.

6.     The Settlement Agreement contains and constitutes a full and complete settlement and release (as defined below) by Named Plaintiff and FLSA and State Wage Law Release from the Opt-Ins and the Settlement Collective Members, each of which includes Defendant and all Releasees.

7.     Subject to Court approval of the Settlement Agreement, and on the terms set forth in this Settlement Agreement, Defendant will pay and promise as follows:

    a.  Defendant will pay up to a total sum of $800,000 ("Total Settlement Amount") into a Qualified Settlement Fund ("QSF") administered by the Settlement Administrator, from which all Court-approved attorney's fees and costs, and service awards will be paid, and against which net amount remaining after those payments ("Net Settlement Fund") Collective Members can make claims for payments in exchange for the Releases (as defined below).

    b.  Subject to approval by the Court, Defendant agrees to pay to Collective Counsel up to 33.33% of the Total Settlement Amount as attorneys' fees and costs and expenses, in full and complete satisfaction of all claims by Plaintiffs and their counsel for attorneys' fees, costs and expenses of any kind whatsoever. The payment of attorneys' fees, costs, and expenses shall be paid from the Total Settlement Amount. Collective Counsel will apply to the Court for payment of said amounts, to be approved by the Court. Defendant and Defendant's counsel will not oppose such a request. The total attorneys' fees and costs actually paid will be as approved by the Court in its Final Order, subject to appellate rights. Defendant will report the payments to Collective Counsel using an IRS Form 1099. The enforceability of this Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees or costs, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of judgment in the Action.

    c.  A service payment of up to $2,500.00 will be made to the Named Plaintiff (hereinafter the "Service Award"). The Service Award, upon Court approval, will be paid out of the QSF. The enforceability of this Settlement Agreement is not contingent on the approval of Service Award. Without limiting the generality of the foregoing, any dispute regarding the service payment shall not affect or delay the finality of this Agreement and shall not affect or delay the entry of judgment in the Action.

    d.  Defendant, through the QSF, will pay to each Settlement Collective Member who cashes his or her respective settlement check and fulfills the conditions of

the claims procedure specified in this Settlement Agreement, the Payment amounts calculated as follows: (a) each Collective Member shall first be allocated $25.00, as their guaranteed minimum settlement amount; (b) the remainder of the Net Settlement Fund will be divided by the total number of workweeks worked by the entire Collective during the Collective Period (i.e., if the total work weeks worked by the Settlement Collective during the Collective Period equal 100 workweeks, each workweek would represent 1/100 [i.e., 1-Share] of the Net Settlement Amount), and then (c) multiplied by the number of each individual Collective Members' respective workweeks during the Collective Period, the ("Pro Rata Settlement Amount"). Each Collective Member's settlement amount will be the combination of the $25.00 minimum settlement payment amount and their respective Pro Rata Settlement Amount. If the Net Settlement Fund is insufficient to pay each Collective Member the guaranteed minimum settlement amount, the guaranteed minimum settlement amount will be reduced proportionally based on the total number of collective members and each member of the collective will receive a proportionate share of the Net Settlement Fund.

e.  HFHS's records shall determine the overall workweeks worked by the Settlement Collective and the share due the Settlement Collective Members.

f.  Settlement Collective Members shall have 60 calendar days from the date the Settlement Administrator mails the Settlement Payment to negotiate their settlement checks. Any Settlement Collective Member payment not negotiated within that time by Collective Members shall be void and returned to Defendant within 30 days after the conclusion of the settlement administration process.

g.  Of the amounts paid to each such Plaintiff and Collective Members, 50% will be deemed wages and subject to normal payroll tax withholding and W-2 reporting, and 50% will be deemed non-wage payment for claimed liquidated damages and/or interest, paid without withholding and subject to reporting as non-employment income reported in Box #3 on IRS Form 1099-MISC.

h.  Defendant shall be responsible for all employer-paid and due taxes on the wage portions of this Settlement, including FICA, FUTA and state unemployment (the "Employer Payroll Taxes") but shall not be liable for any other taxes. The Employer Payroll Taxes shall be paid in addition to the Total Settlement Amount.

i.  The fees for the Settlement Administrator shall be paid by Defendant independent of the Total Settlement Amount.

j.  The fees for the Mediation shall be paid by Defendant independent of the Total Settlement Amount.

k.  Indemnification: The Settlement Collective Members agree that Defendant has not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. The Settlement Collective Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from Defendant pursuant to this Settlement Agreement. The Settlement Collective Members hereby agree to indemnify, pay the costs of defense, and hold Defendant harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by the Settlement Collective Members, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by the Settlement Collective Members, if any, or incurred by Defendant. However, the Settlement Collective Members are not responsible for any federal, state, or local tax liability of Defendant.

## MUTUAL FULL COOPERATION

8.  The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Settlement Agreement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this Settlement Agreement, Collective Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement and to obtain a final judgment in the Action upon completion of the terms and conditions of the Settlement Agreement as approved by the Court.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

9.  Within 14 days of execution of this Settlement Agreement, Plaintiff shall file an Unopposed Motion for Approval of Settlement, Attorneys' Fees and Costs, and Service Awards, that includes a Proposed Approval Order, substantially in the form attached as Exhibit A. Although this will be Plaintiffs' motion and Plaintiffs' responsibility to draft, the Parties will cooperate in the preparation of the Motion.

## DUTIES OF THE PARTIES FOLLOWING APPROVAL

10.  Within thirty (30) days of the Court granting approval of the settlement, Defendant shall provide the Settlement Administrator with the Collective List containing Collective Member names, social security numbers, and last known addresses, along with the respective settlement shares of each Collective Member calculated by Defendant. The Settlement Administrator will issue the Notices of the Settlement and of the Claims Procedure.

11.  **Settlement Administration.**

   a. Rust Consulting has been selected as the Settlement Administrator. All settlement administration costs and fees for the Settlement Administrator, including but not limited to the mailing of the Notice and settlement check to last known addresses, shall be paid by Defendant.

   b. Defendant will not be obligated at any stage to engage investigative services to locate Collective Members; however, the Settlement Administrator shall update Collective Members' last known mailing address through the National Change of Address program certified by the United States Postal Service and other standard skip trace methods.

   c. The Settlement Administrator will issue the Notice in accordance with this Settlement Agreement and any approval Order within thirty (30) days after receiving the Collective Member list from Defendant.

   d. The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF; distribution of the Notice to Collective Members; paying from the QSF the amount of attorneys' fees and costs awarded to Collective Counsel; distributing any service payments; the settlement administration process; providing the Parties on a periodic basis with notice of the identity of individuals who timely submit a settlement check, or a Request for Exclusion of the Settlement, or an objection; calculating and disbursing payment for all appropriate taxes to be paid under the settlement, as stated herein as to the source of funds for payment of taxes owed (including the employer-paid and due taxes as addressed above that are paid outside the Total Settlement Amount); complying with all applicable tax reporting obligations including preparing and filing all applicable tax forms and amendments or modifications required thereto; and distribution of the Settlement Checks to the Collective Members.

12.  **Notice to the Collective Members.**

   a. The Settlement Administrator will send the Court-approved Notice of Collective Action Settlement and the settlement check, substantially in the form attached hereto as Exhibit B, and as approved by the Court (together "Notice"), including any modifications at the direction of the Court, to the Collective Members, by first-class mail within fourteen (14) days of receipt of the Collective List.

   b. Collective Members will have sixty (60) days after the Notice is first mailed to cash their respective settlement checks.

c. Named Plaintiffs and the Opt-Ins shall be deemed participants by this Agreement pursuant to the authority designated to Collective Counsel.

13. **Claims: Binding Effect**

a. Each Settlement Check will include an endorsement that states as follows: I acknowledge that I have read the Notice of Settlement ("Notice") and understand that by endorsing and depositing this check, I agree to participate, or opt-in to, in the settlement of the lawsuit entitled *Riley, et al. v. Henry Ford Health System*, Case No. 2:22-CV-12555 (E.D. Mich.), and release the wage and hour claims described in the Notice.

b. All Collective Members who cash their respective settlement checks will be bound by the final approval order, the judgment, and the releases set forth in this Agreement. The Settlement Administrator will provide counsel for the parties a list of all persons who both cashed and who did not cash the Settlement Checks. The list of persons who cashed Settlement Checks will be filed with the Court and shall be the final opt-in list.

c. None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process; however, Collective Counsel may advise Collective Members how to assert their right or provide other advice as required to comply with Collective Counsel's ethical obligations.

## POTENTIAL VOIDING OF THE SETTLEMENT AGREEMENT

14. A failure of the Court to make final approval conditioned on any material provision of this Settlement Agreement which effects a fundamental change of the Parties' Settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. In the event the Court does not approve the Settlement Agreement according to the terms of this provision, the Parties reserve all rights, claims, and defenses. However, neither Party may void the Settlement Agreement based on the Court's approval or non-approval of a specific amount of attorneys' fees or costs or based on the Court's approval or non-approval of some or all of the Service Award. The Court's failure to approve Collective Counsel's fee and cost request shall not render the remainder of the Settlement Agreement unenforceable.

15. If this Settlement Agreement is voided under Section 14 of this Agreement and the disputed issue is not resolved by the Parties, this Settlement Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Settlement Agreement, its ancillary documents, actions or filings the Parties agreed to, or any statements made in connection with the negotiation of the

*Execution Copy*

settlement, shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

## **SETTLEMENT AGREEMENT RELEASEAND PAYMENT PROCESSES**

16.     This Agreement becomes effective on the Effective Date.

17.     Upon the Effective Date, (and except as to such rights or claims as may be created by this Settlement Agreement), each Collective Member who timely cashes his or her respective settlement check in compliance with the procedures in the Notice shall be deemed to have agreed to and accepted the FLSA and State Law Release as stated below and in the Notice.

18.     <u>Release By Settlement</u> Collective <u>Members</u>. Each Settlement Collective Member who cashes their settlement check agrees to release all claims under the Fair Labor Standards Act ("FLSA"), any claims under the theory of contract, quantum meruit, and/or any other state, federal, or local law related to the payment of wages or any other benefits against Defendant, and any of its parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, directors, managers, employees, successors, heirs, spouses, administrators, executors, assigns, representatives, or other persons or entities acting on their behalf (the "Released Parties") from the beginning of time through the date of approval of the settlement.

19.     <u>Additional Terms Applicable to Named Plaintiff:</u> The following terms apply only to Named Plaintiff Riley:

(a)     <u>General Release</u>. Riley knowingly release and forever discharge HFHS and Releasees of and from any and all claims, known and unknown, asserted or unasserted, which she has or may have against HFHS and/or Releasees as of the date of execution of this Agreement, including but not <u>not</u> limited to any claims relating to, arising from, or based upon, any alleged violation of any federal, state, or local statute, regulation, ordinance or other law, including but not limited to: Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Age Discrimination in Employment Act of 1967 ("ADEA"); The Worker Adjustment and Retraining Notification Act; The Fair Credit Reporting Act; The Family and Medical Leave Act; The Equal Pay Act; The Genetic Information Nondiscrimination Act of 2008 ("GINA"); The Michigan Improved Opportunity Wage Act and its predecessor statutes; the Michigan Payment of Wages and Fringe Benefit Act, any other state statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties; any claim based upon public policy, contract, tort, or common law; any state discrimination or retaliation law; and any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters. This is a general release which shall be interpreted as such to the fullest extent permitted by law.

(b)     <u>Mutual Non-Disparagement</u>. The Parties agrees that they nor their counsel will make any statement to any person or entity, or upon any forum, including but not limited to the media or online, that is disparaging of the business, reputation, competence or good character of Riley, HFHS or any Releasee, or that, if publicized, may cause humiliation, embarrassment or

otherwise tend to injure or cause damage to their business or encourage any entity or person to refrain from, or cease doing business with, Riley, HFHS or any Releasee.

(c) <u>No Re-employment</u>. Riley agrees that she is not eligible for recall, employment, reassignment, contracting with, or assignment, as an employee and/or contractor with HFHS or any of the Releasees. Accordingly, Riley shall not apply in the future for employment, or to be able to contract with HFHS or any Releasee because of, among other things, irreconcilable differences between them. Riley agrees that should she, despite the existence of this Agreement, apply for a position with HFHS, a Releasee, or any one of them, whether based upon an employment, contractor, or other business relationship, that this Agreement shall serve as a legitimate, non-discriminatory and non-retaliatory reason for HFHS and/or Releasees not to hire or otherwise contract or engage in business with Riley. Riley further agrees that if HFHS or any Releasee inadvertently hires her or engages in a business relationship with her, this Agreement constitutes sufficient legal nondiscriminatory and non-retaliatory cause to immediately terminate such employment, position, or relationship. If Riley inadvertently applies for, or accepts, such employment, contract, position, or assignment, she shall immediately withdraw her application or voluntarily terminate such employment, contract, position, or assignment. Riley understands that the foregoing provision is a negotiated provision of the Agreement and not evidence of retaliation. Provided, however, that this prohibition shall not affect Riley's rights to become employed and/or remain employed with entities not currently owned by HFHS or any Releasee that are acquired by HFHS or any Releasee through merger, acquisition, or otherwise after Riley begins employment with such entity.

20. **Distribution of Settlement Payments to Collective Members.**

a. The QSF shall be funded by HFHS as follows:

i. Within ten (10) calendar days of the Effective Date, HFHS shall wire transfer to the Settlement Administrator the total amount of Total Settlement Amount;

ii. The Settlement Administrator shall mail payments by check to all participating Settlement Collective Members within ten (10) calendar days of the funding date.

iii. The Settlement Administrator will issue the Attorneys' Fees Payment by EFT to Anderson Alexander, PLLC in the amount approved by the Court upon request by Anderson Alexander, PLLC within five (5) calendar days of the funding date. Anderson Alexander, PLLC is responsible for providing a W-9 and wiring instructions to the Settlement Administrator. The Settlement Administrator will issue a Form 1099 to Anderson Alexander, PLLC representing this payment.

iv. Within five (5) business days after Defendant funds the QSF, the Settlement Administrator will make payment of the Service Award to the Collective Representative by EFT or check, as determined by

Collective Representative. The Settlement Administrator will issue a Form 1099 to the Collective Representative representing this payment. This payment is contingent on the Settlement Administrator's receipt of a current Form W-9 from the Collective Representative.

     v.    Within five (5) business days after the Settlement Administrator notifies HFHS of the total amount of the payroll taxes due because of taxable settlement payments to Settlement Collective Members, HFHS shall wire transfer the total amount of the Employer Payroll Taxes as that term is defined in Paragraph 6(g).

    b.    Settlement Collective Members shall have sixty (60) calendar days after the date of mailing to cash their settlement checks. Any uncashed check issued by HFHS to Settlement Collective Members after that date shall revert to HFHS. The Settlement Administrator shall refund any uncashed checks from the QSF to HFHS within 30 days.

## PARTIES' AUTHORITY

21.    The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## ENFORCEMENT ACTIONS

22.    This Settlement Agreement is fully enforceable in the U.S. District Court for the Eastern District of Michigan before the Honorable Laurie J. Michelsen or such judge as may be designated in her stead by the procedures of the Court, who shall retain jurisdiction to enforce this agreement. However, before either Party seeks resolution with the Court, they shall return to mediation with Michael Russel to attempt to resolve the issue via mediation between the parties.

## NOTICES

23.    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by the Parties to this Settlement Agreement shall be in writing and shall be addressed as follows:

    To Plaintiffs:

    Clif Alexander
    Austin W. Anderson
    Anderson Alexander, PLLC
    101 N. Shoreline Blvd., Ste. 610
    Corpus Christi, Texas 78401
    (361) 452-1279
    team@a2xlaw.com

Jennifer McManus (P65976)
Fagan McManus, P.C.
25892 Woodward Avenue
Royal Oak, Michigan
(248) 542-6300
jmcmanus@faganlaw.com

To Defendant:

Allan S. Rubin (P44420)
Daniel C. Waslawski (P78037)
Jackson Lewis P.C.
2000 Town Center, Suite 1650
Southfield, Michigan 48075
(248) 936-1900
allan.rubin@jacksonlewis.com
daniel.waslawski@jacksonlewis.com

## CONSTRUCTION

24.     The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, extensive, arms' length negotiations between the Parties and that the Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any party or his or its counsel participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

25.     Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

26.     This Settlement Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court, except that the Parties may mutually agree to reasonable extensions of time that do not affect any effective dates. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

27.     This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous

*Execution Copy*

agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, agreed to by the Parties in this matter, are merged herein. No rights hereunder may be waived except in writing.

## NO PRIOR ASSIGNMENTS

28.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, and successors.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## SIGNATORIES

29.      It is agreed that because the Collective Members are so numerous, it is impossible or impractical and not required to have each Collective Member execute this Settlement Agreement.  The Notice will advise all Collective Members of the binding nature of the release as applicable under this Settlement Agreement and such shall have the same force and effect as if this Settlement Agreement were executed by each Collective Member.

## PUBLICITY

30.      Parties shall not issue any press release about the Settlement Agreement or its terms.  The Parties shall respond to media inquiries only with the acknowledgment that "the matter was amicably resolved" and by directing the inquiring media personnel to the publicly filed documents in the Action for reference.

## COUNTERPARTS

31.      This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties. Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, or by electronic signature through DocuSign shall be deemed original signatures.

*Execution Copy*

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Dated: _May 17, 2023_       *Stephanie Riley*
Stephanie Riley (May 17, 2023 15:52 EDT)
_____
Stephanie Riley, Plaintiff


Dated: _____       _____
Nina Ramsey, Executive Vice President and
Chief Human Resources Officer,
Henry Ford Health System

Approved as to form:

Dated: _May 17, 2023_       *Clif Alexander*
Clif Alexander (May 17, 2023 15:03 CDT)
_____
Collective Counsel


Dated: _____       _____
Defendant's Counsel

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Dated: _____     _____
                                      Stephanie Riley, Plaintiff


Dated: _5/17/23_____     _Nina Ramsey_____
                                      Nina Ramsey, Executive Vice President and
                                      Chief Human Resources Officer,
                                      Henry Ford Health System

Approved as to form:

Dated: _____     _____
                                      Collective Counsel


Dated: _5/17/23_____     _____
                                      Defendant's Counsel

**Exhibit A**
**Approval Order**

*Execution Copy*

STEPHANIE RILEY,
Individually and on behalf of all
others similarly situated,

        Case No: 2:22-cv-12555

    Plaintiff,

        Hon. Laurie J. Michelsen

v.

        Mag. Judge Elizabeth A. Stafford

HENRY FORD HEALTH SYSTEM,

    Defendant.

---

| | |
|---|---|
| Jennifer McManus (P65976) | Allan S. Rubin (P44420) |
| FAGAN McMANUS, P.C. | Daniel C. Waslawski (P78037) |
| 25892 Woodward Avenue | JACKSON LEWIS P.C. |
| Royal Oak, MI 48067 | 2000 Town Center, Ste. 1650 |
| (248) 658-8951 | Southfield, MI 48075 |
| jmcmanus@faganlawpc.com | (248) 936-1900 |
| | Allan.Rubin@jacksonlewis.com |
| Clif Alexander | Daniel.Waslawski@jacksonlewis.com |
| Texas Bar No. 24064805 | |
| Austin W. Anderson | Robert A. Farr (P61597) |
| Texas Bar No. 24045189 | Henry Ford Health System |
| ANDERSON ALEXANDER, PLLC | Office of General Counsel |
| 101 N. Shoreline Blvd., Suite 610 | One Ford Place, Room 4B |
| Corpus Christi, TX 78401 | Detroit, MI 48202 |
| (361) 452-1279 | (248) 703-0662 |
| team@a2xlaw.com | Rfarr1@HFHS.org |
| | (248) 703-0662 |
| Attorneys for Plaintiff | |
| | Attorneys for Defendant |

---

## [PROPOSED] ORDER APPROVING SETTLEMENT AND DISMISSAL OF LAWSUIT WITH PREJUDICE

After a review of Plaintiffs' Unopposed Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, the Settlement Agreement, and the Declarations of Plaintiffs' Counsel, the Court is satisfied that the settlement reached is a "fair and reasonable

resolution of a bona fide dispute" under the Fair Labor Standards Act. *See, e.g.*, *Dillworth et. al. v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *9 (N.D. Ohio Mar. 8, 2010); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); 29 U.S.C. § 216.

It is therefore this _____ day of _____ 2023 Ordered and Adjudged as follows:

1.    The Proposed Settlement is APPROVED, including, but not limited to, the Service Awards, attorneys' fees and costs to Plaintiffs' Counsel, and Notice Process.

2.    That for purposes of settlement a FLSA collective action is certified, consisting of the following:

> The "Settlement Class" or the "Class" consists of all current and former Medical Assistants ("MAs"), Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and any other employees who worked in any facility or in any position where a currently named Plaintiff or Opt-In Plaintiff worked, who were paid on an hourly basis, employed by Henry Ford Health System, who did not work in Henry Ford's Corporate Office Division or for Health Alliance Plan ("HAP"), anywhere in the United States, at any time from October 24, 2019 through the final disposition of this matter ("Putative Collective Members"), and all current and former employees of HFHS who previously filed a consent to join this Lawsuit (i.e., the Named Plaintiff and the Opt-Ins). The Settlement Class shall not include any persons who did not work for HFHS.

IT IS FURTHER ORDERED that:

- All capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Parties' Settlement Agreement;

- Rust Consulting, Inc. will serve as "Settlement Administrator" in providing notice, claim process and administration services under the Settlement Agreement;

- Named Plaintiff is appointed as representative for the Settlement Class; and

- Plaintiffs' Counsel (Jennifer McManus (P65976) of Fagan McManus, P.C. and Clif Alexander and Austin W. Anderson of Anderson Alexander, PLLC are approved as Collective Counsel for the Settlement Collective.

IT IS FURTHER ORDERED that the form and content of the Notice of Proposed Settlement attached to the Motion to Approve Settlement are adequate, proper, comport with Due Process, and they are hereby approved and authorized for distribution to Class Members;

IT IS FURTHER ORDERED that Counsel for the Parties are hereby authorized to jointly use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice, moderate extensions of time that do not alter effective dates, and minor changes to other exhibits that they jointly agree are reasonable or necessary.

IT IS FURTHER ORDERED that this case be and is DISMISSED <u>with</u> Prejudice and <u>without</u> attorney fees or costs, except as provided in the Settlement Agreement.

_____

Hon. Laurie J. Michelsen
United States District Judge

**Exhibit B**
**Notice**

*Execution Copy*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE RILEY, | § | |
| Individually and on behalf of all others | § | |
| similarly situated | § | |
| | § | Civil Action No. 2:22-cv-12555 |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLECTIVE ACTION |
| | § | UNDER 29 U.S.C. § 216(b) |
| HENRY FORD HEALTH SYSTEM, | § | |
| | § | |
| *Defendant.* | § | |

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

## NOTICE OF COLLECTIVE ACTION SETTLEMENT

You are receiving this Notice because you worked for Henry Ford Health System ("Henry Ford" or "Defendant") as a current or former employee of Henry Ford who, according to Henry Ford's records, worked as a Medical Assistant ("MA"), Registered Nurse ("RN"), Licensed Practical Nurses ("LPN"), or a similar patient-facing role at any time, at any time from October 24, 2019 through March 22, 2023 ("Putative Collective Members"), or already joined the Lawsuit.

This Notice involves settlement of a lawsuit which alleged that Defendant's Medical Assistants, Registered nurses, Licensed Practical Nurses, and other employees in similar patient-facing roles were not paid for all hours worked over forty (40) hours in a single workweek, and as a result, were denied overtime wages in violation of the federal Fair Labor Standards Act ("FLSA"). Defendant maintains that it has always complied with all relevant laws, including the FLSA and all state wage and hour laws.

The purpose of this Notice is to inform you of the settlement terms and your rights and options in connection with the Settlement.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **ENDORSE AND NEGOTIATE YOUR SETTLEMENT CHECK** | **If you endorse the back of the Settlement Check and deposit (or otherwise negotiate) it, you will be a Settlement Collective Member and will be bound by the terms of the Settlement Agreement, including the Release, as identified in this Notice.**<br><br>The Settlement Check must be endorsed and negotiated by [deadline] or it will be voided and the funds will revert to Henry Ford. |

| DO NOTHING | If you do not endorse and negotiate your Settlement Check, you will not participate in the settlement or release any claims. |
| --- | --- |

## WHAT THIS NOTICE CONTAINS

Why did I get this notice? ........................................................................[insert page #s]

What is this Lawsuit about?......................................................................[insert page #s]

What are the Settlement terms? ...............................................................[insert page #s]

How can I claim my payment? ..................................................................[insert page #s]

How long do I have to cash my check? ......................................................[insert page #s]

Will I owe any taxes?................................................................................[insert page #s]

What rights am I giving up by negotiating my Settlement Check? ..........[insert page #s]

Do I have to pay any attorney's fees or other costs? .................................[insert page #s]

Where do I find more information? ............................................................[insert page #s]

Who do I contact if I have further questions?............................................[insert page #s]

Time Sensitive Settlement Check ..............................................................[insert page #s]

## Why did I get this Notice?

You have been identified as part of a group of employees who worked for Defendant as [insert job titles covered by settlement], at any time between October 24, 2019 through March 22, 2023, or already joined the Lawsuit.

On [insert date of approval], the Court overseeing the Lawsuit approved a Settlement and ordered that this Notice be sent to all current and former Medical Assistants, Registered nurses, Licensed Practical Nurses, and other employees in similar patient-facing roles who worked for Defendant and were identified as being a part of the Settlement. This Notice explains what you can get from the Settlement and what rights are affected.

Under the terms of the Settlement, you are entitled to receive a payment in the amount included in the Settlement Check, which is enclosed with this Notice. Defendant will not and cannot retaliate against you for participation or non-participation in this Settlement.

## What is the Lawsuit about?

This Lawsuit alleges that, in violation of federal and state law, Henry Ford failed to pay its employees for all hours worked and that as a result, such employees have not been paid wages, including overtime, to which they were entitled under the law. This Lawsuit sought on your behalf, damages from Defendant for the alleged unpaid wages, including overtime wages, liquidated damages and other applicable penalties or interest, and payment by Defendant of Plaintiff's attorneys' fees and expenses.

Defendant denies any liability or wrongdoing of any kind. Nonetheless, to avoid the costs and uncertainty of litigation, Defendant has agreed to create a Settlement Fund from which you will be paid, if you timely endorse and deposit (or otherwise negotiate) your Settlement Check.

## What are the Settlement terms?

The Settlement Agreement requires that Defendant create a Settlement Fund of $800,000.00 from which the amount remaining after payment of Court-approved attorneys' fees, costs, and any service award to the Named Plaintiff (the "Net Settlement Fund"), will be made available to all Collective Members. Each Collective Member's share of the settlement will be calculated using a formula that will divide the Net Settlement Fund on a *pro rata* basis, calculated using a formula that will allocate the Net Settlement Fund depending on the number of weeks worked during the relevant time-period. All determinations about hours worked will be based upon Defendant's records.

Named Plaintiff Riley will receive a $2,500.00 service award in addition to his share of the Net Settlement Fund.

## How can I claim my payment?

You can claim your payment under this agreement by endorsing and depositing (or otherwise negotiating) the Settlement Check enclosed with this Notice.

The gross amount you are entitled to under the Settlement Agreement is: [insert amount]. The Settlement Check includes payment for this amount, less any tax withholdings, and is enclosed with this Notice of Settlement.

## How long do I have to cash my check?

Your Settlement Check will have a date on it. The settlement checks will be valid for **60 calendar days** from the date on the check.

If you lose your check or it is damaged in the mail, contact Collective Counsel whose information is below. You may be able to have it reissued, provided you ask within the 90-day time period.

*Execution Copy*

If you do not cash your check within **60 calendar days** of the date it was issued, your check will be **void** and will be returned to Defendant.

## Will I owe any taxes?

The settlement payment amount you receive will be divided between one-half wage income subject to normal payroll tax withholding and W-2 reporting, and one-half non-wage income not subject to withholding and reported by IRS Form 1099-MISC. The payroll deductions will have been taken out of the one-half wages portion of your settlement check. If you have questions about the tax consequences of the payment to you, you should consult with an accountant or other tax advisor. Collective Counsel cannot provide tax advice.

Defendant has not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. As a result, by accepting the settlement, you will be solely responsible for the timely payment of all taxes owed, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from Defendant pursuant to this Settlement Agreement.

## What rights am I giving up by negotiating my Settlement Check?

If you deposit or otherwise negotiate your Settlement Check, you agree to Release the Released Claims defined below:

> "Released Claims" means all claims, rights, demands, liabilities and causes of action you have or may perceive yourself to have under against the Released Parties under all federal, state, and local wage laws, including, but not limited to, the Fair Labor Standards Act ("FLSA"), the Michigan Improved Workforce Opportunity Wage Act, the Michigan Payment of Wages and Fringe Benefit Act, any local rule or ordinance, claims under the theory of contract, *quantum meruit,* and/or any other state, federal, or local law related to the payment of wages, benefits, liquidated damages, punitive damages, or any other form of damage from the beginning of time through the date of approval of the settlement.

> "Released Parties" means Defendant Henry Ford Health System and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

Your release of claims will only be effective if you endorse and deposit or otherwise negotiate your Settlement Check. If you do endorse and deposit or otherwise negotiate your Settlement Check, you will not receive your payment, but you will not release any claims.

**Do I have to pay any attorney's fees or other costs?**

No.  Your settlement share will not be reduced in any way by the amounts, if any, awarded to the attorneys in the Lawsuit to be paid by Defendant out of the Settlement Fund.

As part of the Settlement, the Court appointed Clif Alexander and Austin W. Anderson of ANDERSON ALEXANDER, PLLC and Jennifer McManus of FAGAN MCMANUS, P.C. as the attorneys for the Collective Members in this case ("Collective Counsel").

Under the Settlement, Defendant is required to pay Collective Counsel in this case. The Court has approved an award of attorneys' fees, costs, and litigation expenses to account for the time and money invested in this action. Payment of attorneys' fees and costs will be made from the Settlement Fund. To date, Collective Counsel has been prosecuting the Lawsuit, without being paid, while advancing the costs and expenses of litigation on behalf of the Collective Members.

The Settlement is being administered by Rust Consulting, Inc. The Settlement Administrator will be paid by HFHS. The address and contact information for counsel for the Parties is:

| *Collective Counsel* | *Defense Counsel* |
|---|---|
| **Anderson Alexander, PLLC** | **Jackson Lewis P.C.** |
| Clif Alexander | Allan S. Rubin (P44420) |
| Austin W. Anderson | Daniel C. Waslawski (P78037) |
| 101 N. Shoreline Blvd., Suite 610 | 2000 Town Center, Suite 1650 |
| Corpus Christi, Texas 78401 | Southfield, Michigan 48075 |
| (361) 452-1279 | (248) 936-1900 |
| team@a2xlaw.com | allan.rubin@jacksonlewis.com |
| | daniel.waslawski@jacksonlewis.com |
| **Fagan McManus, P.C.** | |
| Jennifer McManus (P65976) | |
| 25892 Woodward Avenue | |
| Royal Oak, Michigan | |
| (248) 542-6300 | |
| jmcmanus@faganlaw.com | |

**Where do I find more information?**

This Notice is only a summary of the Lawsuit and the Settlement.  For a more detailed statement of the Lawsuit or Settlement, you may refer to the pleadings, the Settlement Agreement, and the other papers filed in the Lawsuit, which may be requested from Collective Counsel. You also may obtain copies of this Notice and/or the Settlement Agreement or further information regarding the Settlement from Collective Counsel at the phone number or email address provided above.

Please direct all inquiries regarding the settlement, procedures, or address updates to the Settlement Administrator who has been retained to address those inquiries, at [TPA CONTACT PHONE] or [TPA EMAIL].

| Who do I contact if I have further questions? |
| --- |

All questions or inquiries regarding this Notice and/or Settlement, including the amounts payable to you, settlement procedures or deadlines, or address updates, should be directed to the Settlement Administrator at: at [TPA CONTACT PHONE] or [TPA EMAIL]. If your question involves a request for legal advice, you may contact Collective Counsel at the phone numbers or addresses listed in this Notice.

**PLEASE DO NOT CONTACT THE COURT OR THE JUDGE WITH ANY INQUIRIES**

4854-8947-9268, v. 4